UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHAWN ALAN HILLIER, #510417,

Petitioner,

v.

CASE NO. 5:14-CV-11846
HONORABLE JOHN CORBETT O'MEARA

BONITA HOFFNER,

Respondent.
_______________________________________/

**ORDER DENYING PETITIONER'S MOTION TO HOLD PETITION IN ABEYANCE**

**I.**

This is a habeas case brought pursuant to 28 U.S.C. § 2254. Michigan prisoner Shawn Alan Hillier ("Petitioner") was convicted of armed robbery, MICH. COMP. LAWS § 750.529, and conspiracy to commit armed robbery, MICH. COMP. LAWS §§ 750.157a, 750.529, following a jury trial in the Genesee County Circuit Court. He was sentenced as a third habitual offender, MICH. COMP. LAWS § 769.11, to concurrent terms of 15 to 30 years imprisonment on those convictions in 2011.

In his current habeas petition, Petitioner raises claims concerning his confrontation rights and the admission of a co-defendant's statement and the sufficiency of the evidence. The matter is before the Court on Petitioner's motion to dismiss without prejudice *and* hold the habeas petition in abeyance so that he may return to the state courts and exhaust additional, unspecified issues which he states were not previously raised due to the ineffectiveness of trial and appellate counsel. For the reasons stated, the Court denies Petitioner's motion.

**II.**

Petitioner's convictions arise from his and his co-defendant's robbery of a 70-year-old woman outside a Kmart store in Flint, Michigan on December 4, 2010. The Michigan Court of Appeals described the relevant facts, which are presumed correct on federal habeas review, 28 U.S.C. § 2254(e)(1); *Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009), as follows:

> On December 4, 2010, at about 2:00 p.m., the 70–year–old victim was walking to the entrance of a Kmart store located in Flint when defendant and Orville McNew[FN1] came around the corner, walked toward her, and defendant said: "Hi, how are you today?" The victim testified that defendant was wearing a black leather jacket and McNew had a "bandage" on at least his hand. Defendant kept moving toward the victim and, when he reached her, he grabbed the victim's purse and "kept jerking it back and forth until it threw me to the ground." While on the ground, the victim held on to her purse and pulled her legs back like she was going to kick defendant, but she stopped when McNew, who was standing very close to the victim, said to her: "I'm gonna shoot you." After McNew threatened to shoot her a second time, the victim let go of her purse to defendant, and the men ran away with her purse. The victim testified that it would be "better to be alive with no purse than dead with a purse."
>
> FN1. McNew died in March 2011.
>
> An eyewitness, Terri Darisaw, testified that she was sitting in a vehicle and saw defendant attempt to take the victim's purse. When he did not succeed, she saw McNew, who had a cast on his arm, "hit her on the side of her face," causing the victim to fall to the ground and enabling defendant to take the purse. Darisaw called 911 before following the fleeing men in her vehicle. She saw another person who was driving a truck approach the men, but he was ultimately scared away when McNew started motioning like he had a gun in his coat. After determining that defendant and McNew went to motel room, Darisaw advised 911 about their location. When the police arrived, Darisaw positively identified defendant and McNew as the men who attacked the victim and they were arrested.
>
> Another eyewitness, Scott Cross, testified that he was near the front of the Kmart entrance when he heard that someone had just stolen a lady's purse. Cross then saw someone running across the parking lot. He and his girlfriend quickly returned to their truck and followed the fleeing man who was running with another man. Cross and his girlfriend watched the men and eventually saw them enter into a corner motel room. Cross' girlfriend called 911 to report their location and two other witnesses pulled up to the motel in their vehicles; thus, there were three vehicles parked near defendant's motel room. After the police arrived,

defendant and McNew were arrested. Cross positively identified both men; he said they were "definitely" the men he saw running away from Kmart.

A third eyewitness, Loren Frost, testified that he was in the Kmart parking lot with his wife when he saw two men "coming across" the parking lot. He then heard a lady scream and as he ran toward the woman, he saw two men "trying to steal her purse." One man had a cast on his arm. The other man was "pulling on it trying to get it away from her" and he "finally knocked her on the ground ." Frost also heard a man say that if she did not let go of the purse, "I'm gonna shoot," but he did not know which man made the threat. The one man without a cast on his arm was able to get the purse from the lady and both men then ran across the parking lot. Frost returned to his Chevy Blazer and followed them to a parking lot near another business. Then the man with the cast turned around, "made a motion like he had a gun in his pocket and said I'm gonna shoot you and put his hand in his pocket." Frost, who was ten to 15 feet away from the man, put his Blazer in reverse and left the parking lot. But Frost continued to follow both men and watched them go to a motel. While he was parked, another witness told Frost that the men were in a specific motel room and so he waited for the police to arrive. Frost positively identified defendant as the man he saw take the lady's purse and defendant was taken into custody. Frost also identified McNew as the second man involved in the robbery.

Flint Police Officer Michael Dumanois testified that he responded to a call that suspects of a robbery were at a motel. When he arrived, a witness identified defendant, who was walking outside the motel without a jacket on, and defendant was arrested. The witness advised that the other suspect was in a certain motel room and he had a cast on his arm. Officer Dumanois waited for back-up to arrive and then went to the room and took that suspect into custody. A purse was inside the room and its contents were scattered about, including a checkbook in the victim's name. A black leather jacket was also recovered from the room. Officer Dumanois then spoke to several eyewitnesses outside, including Frost, Cross, and Darisaw, who identified the suspects as the men who robbed the lady of her purse and ran through the Kmart parking lot. Flint Police Officer Christopher Bigelow testified that, after the suspects were arrested, he drove the victim to the motel and she positively identified both defendant and McNew. Further, the motel owner testified that defendant had rented the motel room using photo identification, a copy of which was provided to police.

Before the trial, defendant moved to suppress McNew's statement to the victim that he would shoot her if she did not release her purse. Defendant argued that the hearsay statement could not be admitted to prove that there was a conspiracy to commit armed robbery because there was no independent evidence of such a conspiracy. The prosecution disagreed, arguing that the challenged statement was not hearsay because it was made by a coconspirator during the course of and in

> furtherance of the conspiracy. Further, the prosecution argued, there was independent proof of the conspiracy; defendant and McNew were both involved in this robbery, they fled the scene together, running in the same direction, to a motel room that was in defendant's name and where the victim's purse was located. The trial court agreed that the disputed statement was not hearsay because it was made in the furtherance of a conspiracy to commit a crime and that the conspiracy was established by a preponderance of the evidence independent of the statement. Consequently, McNew's statement to the victim that he would shoot her if she did not release her purse was admitted into evidence..

*People v. Hillier*, No. 307644, 2013 WL 375922. *1-2 (Mich. Ct. App. Jan. 31, 2013) (unpublished)

Following his convictions and sentencing, Petitioner filed an appeal of right with the Michigan Court of Appeals raising the same claims contained in his current petition. The Michigan Court of Appeals affirmed his convictions. *Id*. Petitioner then filed an application for leave to appeal with the Michigan Supreme Court, which was denied. *People v. Hillier*, 494 Mich. 870, 832 N.W.2d 208 (June 25, 2013). Petitioner dated his federal habeas petition on May 1, 2014. He dated the instant motion on October 26, 2014.

**III.**

As noted, Petitioner seeks to hold his habeas petition in abeyance so that he can exhasut additional issues in the state courts. A prisoner filing a petition for a writ of habeas corpus under 28 U.S.C. §2254 must first exhaust all state remedies. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) ("state prisoners must give the state courts one full fair opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process"); *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994). To satisfy this requirement, the claims must be "fairly presented" to the state courts, meaning that the prisoner must have asserted both the factual and legal bases for the claims in the state courts. *McMeans v. Brigano*, 228 F.3d 674,

681 (6th Cir. 2000); *see also Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006) (citing *McMeans*). The claims must also be presented to the state courts as federal constitutional issues. *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984). A Michigan prisoner must properly present each issue he seeks to raise in a federal habeas proceeding to both the Michigan Court of Appeals and the Michigan Supreme Court to satisfy the exhaustion requirement. *Welch v. Burke*, 49 F. Supp. 2d 992, 998 (E.D. Mich. 1999); *see also Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990). While the exhaustion requirement is not jurisdictional, a "strong presumption" exists that a petitioner must exhaust all available state remedies before seeking federal habeas review. *Granberry v. Greer*, 481 U.S. 129, 131, 134-35 (1987). The burden is on the petitioner to prove exhaustion. *Rust*, 17 F.3d at 160.

A federal court has discretion to stay a mixed habeas petition, containing both exhausted and unexhausted claims, to allow a petitioner to present unexhausted claims to the state courts and then return to federal court on a perfected petition. *Rhines v. Weber*, 544 U.S. 269, 276 (2005). Stay and abeyance is available only in "limited circumstances" such as when the one-year statute of limitations poses a concern, and when the petitioner demonstrates "good cause" for the failure to exhaust state remedies before proceeding in federal court, the petitioner has not engaged in intentionally dilatory litigation tactics, and the unexhausted claims are not "plainly meritless." *Id.* at 277.

Petitioner has not shown the need for a stay. His current habeas claims are exhausted and he has not shown that the one-year statute of limitations applicable to federal habeas actions, *see* 28 U.S.C. § 2244(d), poses a concern. The one-year limitations period does not begin to run until 90 days after the conclusion of direct appeal, *see Jimenez v. Quarterman*, 555 U.S. 113, 120

(2009) (stating that a conviction becomes final when "the time for filing a certiorari petition expires"); *Lawrence v. Florida*, 549 U.S. 327, 333 (2007). The Michigan Supreme Court denied leave to appeal on June 25, 2013 and the time for seeking a writ of certiorari with the United States Supreme Court expired on September 23, 2013. Petitioner dated his federal habeas petition on May 1, 2014. Thus, less than 7½ months of the one-year period had run when Petitioner instituted this action. While the time in which this case has been pending in federal court is not statutorily tolled, *see Duncan v. Walker*, 533 U.S. 167, 181-82 (2001) (a federal habeas petition is not an "application for State post-conviction or other collateral review" within the meaning of 28 U.S.C. § 2244(d)(2) so as to statutorily toll the limitations period), such time is equitably tolled. *Johnson v. Warren*, 344 F. Supp. 2d 1081, 1088-89 (E.D. Mich. 2004). The limitations period will also be tolled during the time in which any properly filed post-conviction or collateral actions are pending in the state courts. 28 U.S.C. § 2244(d)(2); *Carey v. Saffold*, 536 U.S. 214, 219-221 (2002). Given that more than 4½ months of the one-year period remains, Petitioner has sufficient time to exhaust any additional issues in the state courts and return to federal court should he wish to do so. He has not shown the need for a stay.

Moreover, while Petitioner alleges ineffective assistance of counsel as cause for the failure to previously exhaust his issues and there is no evidence of intentional delay, Petitioner does not identify his unexhausted issues and the Court cannot determine whether his additional claims are plainly meritless. Given such circumstances, a stay and abeyance is unwarranted. Rather, should Petitioner wish to pursue additional claims in the state courts before proceeding on federal habeas review, he must move for a non-prejudicial dismissal of his habeas petition.

**IV.**

Accordingly, the Court **DENIES** Petitioner's motion to hold his habeas petition in abeyance. Should Petitioner wish to have the Court dismiss the present petition, which contains only exhausted claims, so that he may pursue additional issues in the state courts, he may move for a non-prejudicial dismissal of his habeas petition within **30 DAYS** of the filing date of this order. If he does not do so, the Court shall proceed on the claims contained in his pending habeas petition.

**IT IS SO ORDERED.**

s/John Corbett O'Meara
United States District Judge

Date: November 5, 2014

I hereby certify that a copy of the foregoing document was served upon the parties of record on this date, November 5, 2014, using the ECF system and/or ordinary mail.

s/William Barkholz
Case Manager