UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHAWN ALAN HILLIER, #510417,

        Petitioner,

                              CASE NO. 5:14-CV-11846
v.                            HON. JOHN CORBETT O'MEARA

BONITA HOFFNER,

        Respondent.
_____/

**OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF
HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY,
AND DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL**

**I.    Introduction**

      This is a habeas case brought pursuant to 28 U.S.C. § 2254.  Michigan prisoner Shawn Alan Hillier ("Petitioner") was convicted of armed robbery, MICH. COMP. LAWS § 750.529, and conspiracy to commit armed robbery, MICH. COMP. LAWS §§ 750.157a, 750.529, following a jury trial in the Genesee County Circuit Court.  He was sentenced as a third habitual offender, MICH. COMP. LAWS § 769.11, to concurrent terms of 15 to 30 years imprisonment on those convictions in 2011.  In his pleadings, he raises claims concerning his confrontation rights and the sufficiency of the evidence to support his convictions.  For the reasons set forth herein, the Court finds that those claims lack merit and denies the habeas petition.  The Court also denies a certificate of appealability and denies leave to proceed in forma pauperis on appeal.

## II.     Facts and Procedural History

Petitioner's convictions arise from his and his co-defendant's robbery of a 70-year-old woman outside a Kmart store in Flint, Michigan on December 4, 2010. The Michigan Court of Appeals described the relevant facts, which are presumed correct on federal habeas review, 28 U.S.C. § 2254(e)(1); *Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009), as follows:

> On December 4, 2010, at about 2:00 p.m., the 70–year–old victim was walking to the entrance of a Kmart store located in Flint when defendant and Orville McNew[FN1] came around the corner, walked toward her, and defendant said: "Hi, how are you today?" The victim testified that defendant was wearing a black leather jacket and McNew had a "bandage" on at least his hand. Defendant kept moving toward the victim and, when he reached her, he grabbed the victim's purse and "kept jerking it back and forth until it threw me to the ground." While on the ground, the victim held on to her purse and pulled her legs back like she was going to kick defendant, but she stopped when McNew, who was standing very close to the victim, said to her: "I'm gonna shoot you." After McNew threatened to shoot her a second time, the victim let go of her purse to defendant, and the men ran away with her purse. The victim testified that it would be "better to be alive with no purse than dead with a purse."
>
> FN1. McNew died in March 2011.
>
> An eyewitness, Terri Darisaw, testified that she was sitting in a vehicle and saw defendant attempt to take the victim's purse. When he did not succeed, she saw McNew, who had a cast on his arm, "hit her on the side of her face," causing the victim to fall to the ground and enabling defendant to take the purse. Darisaw called 911 before following the fleeing men in her vehicle. She saw another person who was driving a truck approach the men, but he was ultimately scared away when McNew started motioning like he had a gun in his coat. After determining that defendant and McNew went to motel room, Darisaw advised 911 about their location. When the police arrived, Darisaw positively identified defendant and McNew as the men who attacked the victim and they were arrested.
>
> Another eyewitness, Scott Cross, testified that he was near the front of the Kmart entrance when he heard that someone had just stolen a lady's purse. Cross then saw someone running across the parking lot. He and his girlfriend quickly returned to their truck and followed the fleeing man who was running with another man. Cross and his girlfriend watched the men and eventually saw them enter into a corner motel room. Cross' girlfriend called 911 to report their location and two other witnesses pulled up to the motel in their vehicles; thus, there were three vehicles parked near defendant's motel room. After the police arrived, defendant and McNew were

arrested. Cross positively identified both men; he said they were "definitely" the men he saw running away from Kmart.

A third eyewitness, Loren Frost, testified that he was in the Kmart parking lot with his wife when he saw two men "coming across" the parking lot. He then heard a lady scream and as he ran toward the woman, he saw two men "trying to steal her purse." One man had a cast on his arm. The other man was "pulling on it trying to get it away from her" and he "finally knocked her on the ground ." Frost also heard a man say that if she did not let go of the purse, "I'm gonna shoot," but he did not know which man made the threat. The one man without a cast on his arm was able to get the purse from the lady and both men then ran across the parking lot. Frost returned to his Chevy Blazer and followed them to a parking lot near another business. Then the man with the cast turned around, "made a motion like he had a gun in his pocket and said I'm gonna shoot you and put his hand in his pocket." Frost, who was ten to 15 feet away from the man, put his Blazer in reverse and left the parking lot. But Frost continued to follow both men and watched them go to a motel. While he was parked, another witness told Frost that the men were in a specific motel room and so he waited for the police to arrive. Frost positively identified defendant as the man he saw take the lady's purse and defendant was taken into custody. Frost also identified McNew as the second man involved in the robbery.

Flint Police Officer Michael Dumanois testified that he responded to a call that suspects of a robbery were at a motel. When he arrived, a witness identified defendant, who was walking outside the motel without a jacket on, and defendant was arrested. The witness advised that the other suspect was in a certain motel room and he had a cast on his arm. Officer Dumanois waited for back-up to arrive and then went to the room and took that suspect into custody. A purse was inside the room and its contents were scattered about, including a checkbook in the victim's name. A black leather jacket was also recovered from the room. Officer Dumanois then spoke to several eyewitnesses outside, including Frost, Cross, and Darisaw, who identified the suspects as the men who robbed the lady of her purse and ran through the Kmart parking lot. Flint Police Officer Christopher Bigelow testified that, after the suspects were arrested, he drove the victim to the motel and she positively identified both defendant and McNew. Further, the motel owner testified that defendant had rented the motel room using photo identification, a copy of which was provided to police.

Before the trial, defendant moved to suppress McNew's statement to the victim that he would shoot her if she did not release her purse. Defendant argued that the hearsay statement could not be admitted to prove that there was a conspiracy to commit armed robbery because there was no independent evidence of such a conspiracy. The prosecution disagreed, arguing that the challenged statement was not hearsay because it was made by a coconspirator during the course of and in furtherance of the conspiracy. Further, the prosecution argued, there was independent proof of the conspiracy; defendant and McNew were both involved in this robbery,

3

> they fled the scene together, running in the same direction, to a motel room that was in defendant's name and where the victim's purse was located. The trial court agreed that the disputed statement was not hearsay because it was made in the furtherance of a conspiracy to commit a crime and that the conspiracy was established by a preponderance of the evidence independent of the statement. Consequently, McNew's statement to the victim that he would shoot her if she did not release her purse was admitted into evidence..

*People v. Hillier*, No. 307644, 2013 WL 375922. *1-2 (Mich. Ct. App. Jan. 31, 2013) (unpublished)

Following his convictions and sentencing, Petitioner filed an appeal of right with the Michigan Court of Appeals raising the same claims contained in his current petition. The Michigan Court of Appeals affirmed his convictions. *Id*. Petitioner then filed an application for leave to appeal with the Michigan Supreme Court, which was denied. *People v. Hillier*, 494 Mich. 870, 832 N.W.2d 208 (June 25, 2013).

Petitioner dated his federal habeas petition on May 1, 2014. He raises the following claims:

I. He was denied his right to confrontation. A non-testimonial statement was used against him as evidence and he was not able to cross-examine the witness who made the statement.

II. There was insufficient evidence of armed robbery and conspiracy to commit armed robbery to support his convictions.

Respondent has filed an answer to the petition contending that the claims lack merit.

### III.   Standard of Review

Federal law imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002).

"[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409. "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh*, 521 U.S. at 333, n. 7; *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)).

The United States Supreme Court has held that "a state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the

5

correctness of the state court's decision." *Harrington v. Richter*, _ U.S. _, 131 S. Ct. 770, 786 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)). Pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* Thus, in order to obtain federal habeas relief, a state prisoner must show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *Williams*, 529 U.S. at 412; *see also Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) (noting that the Supreme Court "has held on numerous occasions that it is not 'an unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this Court'") (quoting *Wright v. Van Patten*, 552 U.S. 120, 125-26 (2008) (per curiam)); *Lockyer*, 538 U.S. at 71-72. Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington*, 131 S. Ct. at 785. Furthermore, it "does not require citation of [Supreme Court] cases–indeed, it does not even require awareness of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16. While the

6

requirements of "clearly established law" are to be determined solely by Supreme Court precedent, the decisions of lower federal courts may be useful in assessing the reasonableness of the state court's resolution of an issue. *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003)); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002).

Lastly, a state court's factual determinations are presumed correct on federal habeas review. *See* 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998). Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, _ U.S. _, 131 S. Ct. 1388, 1398 (2011).

**IV.    Analysis**

    **A.    Confrontation Claim**

Petitioner first asserts that he is entitled to habeas relief because his confrontation rights were violated by the admission of co-defendant Orville McNew's statement to the victim that he would shoot her if she did not let go of her purse where McNew was unavailable to testify at trial and Petitioner did not have the opportunity to question him about his statement. Respondent contends that this claim lacks merit.

The Confrontation Clause guarantees a criminal defendant the right to confront the witnesses against him. *Davis v. Alaska*, 415 U.S. 308, 315 (1973). In *Crawford v. Washington*, 541 U.S. 36, 54 (2004), the Supreme Court held that the testimonial statement of a witness who does not appear at trial is inadmissible unless the witness is unavailable to testify and the defendant has had a prior opportunity to cross-examine the witness. Testimonial statements include grand jury testimony,

7

preliminary hearing testimony, and prior trial testimony, as well as statements made during police interrogations. *Id.* at 54. Testimonial statements do not include remarks made to family members or acquaintances, business records, or statements made in furtherance of a conspiracy. *Id.* at 51-52, 56; *United States v. Martinez*, 430 F.3d 317, 328-29 (6th Cir. 2005); *see also United States v. Stover*, 474 F.3d 904, 912-13 (6th Cir. 2007). The Confrontation Clause is not implicated, and thus need not be considered, however, when non-testimonial hearsay is at issue. *Davis v. Washington*, 547 U.S. 813, 823-26 (2006); *Desai v. Booker*, 538 F.3d 424, 425-26 (6th Cir. 2008); *see also Whorton v. Bockting*, 549 U.S. 406, 420 (2007) (noting that the Confrontation Clause "has no application to such statements and therefore permits their admission even if they lack indicia of reliability").

The Michigan Court of Appeals denied relief on this claim, finding that the trial court did not err in admitting the disputed testimony and Petitioner's confrontation rights were not violated because the testimony was properly admitted under the co-conspirator exception to the hearsay rule. *Hollier*, 2013 WL 375922 at *2-3.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts.[1] The admission of the testimony relating co-defendant McNew's threat to shoot the victim did not violate Petitioner's confrontation rights because McNew's statement was made in furtherance of their conspiracy and was non-testimonial in nature. *See Crawford*, 541 U.S. at 51-52. As discussed *supra*, the Confrontation Clause is not implicated when non-testimonial hearsay is at issue. *Davis*, 547 U.S. at 823-26. Moreover, "because it is premised on the Confrontation Clause, the *Bruton* rule (concerning the admissibility

---

[1] To the extent that it could be argued that the Michigan Court of Appeals did not address the federal nature of this claim, the Court notes that it would reach the same result under a *de novo* standard of review.

of a non-testifying co-defendant's statements), like the Confrontation Clause itself, does not apply to non-testimonial statements." *United States v. Johnson*, 581 F.3d 320, 326 (6th Cir. 2009). The trial court thus did not violate Petitioner's constitutional rights by admitting testimony relating co-defendant McNew's threat to shoot the victim.

Furthermore, to the extent that Petitioner asserts that such testimony was improperly admitted under the Michigan Rules of Evidence, he merely alleges a violation of state law which fails to state a claim upon which habeas relief may be granted. *See, e.g., Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"). State courts are the final arbiters of state law and the federal courts will not intervene in such matters. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Sanford v. Yukins*, 288 F.3d 855, 860 (6th Cir. 2002). Habeas relief is not warranted on this claim.

### B. Sufficiency of the Evidence Claim

Petitioner also asserts that he is entitled to habeas relief because the prosecution presented insufficient evidence to support his armed robbery and conspiracy to commit armed robbery convictions. Respondent contends that this claim lacks merit.

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). The question on a sufficiency of the evidence claim is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). A federal habeas court views this standard through the

framework of 28 U.S.C. § 2254(d). *Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir. 2002). Thus, under the AEDPA, challenges to the sufficiency of the evidence "must survive two layers of deference to groups who might view facts differently" than a reviewing court on habeas review – the factfinder at trial and the state court on appellate review – as long as those determinations are reasonable. *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). Furthermore, the *Jackson* standard must be applied "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006) (quoting *Jackson*, 443 U.S. at 324 n. 16). "A reviewing court does not re-weigh the evidence or re-determine the credibility of the witnesses whose demeanor has been observed by the trial court." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (citing *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)). Accordingly, the "mere existence of sufficient evidence to convict . . . defeats a petitioner's claim." *Matthews*, 319 F.3d at 788-89.

Under Michigan law, the elements of armed robbery are: (1) an assault, (2) a felonious taking of property from the victim's presence or person, (3) while the defendant is armed with a weapon described in the statute. *See* MICH. COMP. LAWS § 750.529; *People v. Carines*, 460 Mich. 750, 757, 597 N.W.2d 130 (1999); *People v. Allen*, 201 Mich. App. 98, 100, 505 N.W.2d 869 (1993). To convict a defendant under an aiding and abetting theory, the prosecution must establish that the crime was committed by the defendant or some other person, that the defendant performed acts or gave encouragement that aided or assisted in the commission of the crime, and that the defendant either intended to commit the crime or knew that the principal intended to commit the crime at the time he or she gave the aid or encouragement. *Carines*, 460 Mich. at 757-58; *see also People v. Moore*, 470 Mich. 56, 679 N.W.2d 41, 49 (2004); MICH. COMP. LAWS § 767.39. An

aider and abettor's state of mind may be inferred from all the facts and circumstances, including a close association between the defendant and the principal, the defendant's participation in the planning or execution of the crime, and evidence of flight after the crime. *Carines*, 460 Mich. at 757–58.

A conspiracy under Michigan law involves the mutual agreement or understanding, express or implied, between two or more persons to commit a criminal act or a legal act by unlawful means. *See* MICH. COMP. LAWS § 750.157a; *People v. Anderson*, 418 Mich. 31, 36, 340 N.W.2d 634 (1983). Conspiracy may be established by circumstantial evidence and may be based on inference. *People v. McKenzie*, 206 Mich. App. 425, 428, 522 N.W.2d 661 (1994). Direct proof of agreement is not required, nor is it necessary that a formal agreement be proven. It is sufficient if the circumstances, acts, and conduct of the parties establish an agreement in fact. *People v. Justice (after remand)*, 454 Mich. 334, 347, 562 N.W.2d 652 (1997). To sustain a conviction for conspiracy to commit armed robbery, the prosecution must prove that show that defendant knowingly entered into an agreement with at least one other person to commit armed robbery. *People v. Barker*, No. 253403, 2005 WL 562809, *2 (Mich. App. March 10, 2005).

The prosecution must prove every element of a charged offense beyond a reasonable doubt. This burden includes proving that the defendant is the person who committed the crime. *See People v. Oliphant*, 399 Mich. 472, 489, 250 N.W.2d 443 (1976); *People v. Kern*, 6 Mich. App. 406, 409, 149 N.W.2d 216 (1967). Direct or circumstantial evidence and reasonable inferences arising from that evidence may constitute satisfactory proof of the elements of an offense. *People v. Nowack*, 462 Mich. 392, 399-400, 614 N.W.2d 78 (2000); *People v. Jolly*, 442 Mich. 458, 466, 502 N.W.2d 177 (1993); *see also People v. Johnson*, 146 Mich. App. 429, 434, 381 N.W.2d 740 (1985).

> The Michigan Court of Appeals denied relief on this claim, explaining in relevant part:
>
> Here, viewing the evidence in the light most favorable to the prosecution, a reasonable jury could conclude beyond a reasonable doubt that an armed robbery was committed by McNew, defendant assisted in the commission of the armed robbery, and defendant intended to commit the armed robbery or, at least, knew that McNew intended to commit an armed robbery at the time that he aided and encouraged the armed robbery. As discussed above, defendant and McNew selected a vulnerable victim, she was attacked by defendant and, when she fought back, defendant continued to fight the victim for her purse until McNew threatened to shoot her, which caused the victim to relinquish her purse to defendant, who took the purse and ran away with McNew.
>
> Further, viewing the evidence in the light most favorable to the prosecution, a reasonable jury could conclude beyond a reasonable doubt that defendant and McNew conspired to commit armed robbery. Again, as discussed above, circumstantial evidence together with reasonable inferences lead to the conclusions that defendant and McNew agreed to: target a vulnerable victim, approach the victim together in an intimidating manner, and employ brute force, violence, as well as convincing threats of grievous injury by gunshot to accomplish an armed robbery. *See Martin*, 271 Mich App at 316–317. Although the victim was on the ground, defendant continued to fight the victim for her purse until she gave up the fight after McNew threatened to shoot her. Defendant then took the purse and ran away with McNew to a motel room registered in defendant's name where they examined the contents of the purse. Because the evidence viewed in the light most favorable to the prosecution was sufficient to establish both crimes beyond a reasonable doubt, the trial court properly denied defendant's motion for a directed verdict.

*Hillier*, 2013 WL 375922 at *4-5.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. The prosecution presented sufficient evidence to establish Petitioner's guilt of armed robbery and conspiracy to commit armed robbery through the testimony of the victim, the three eyewitnesses, and the police testimony, as well as reasonable inferences from that testimony. To be sure, a victim's testimony alone can be constitutionally sufficient to sustain a conviction. *See Tucker v. Palmer*, 541 F.3d 652, 658 (6th Cir. 2008) (citing cases). The victim's and the witnesses' descriptions of Petitioner's actions during and after the

incident establish his intent to commit the armed robbery and to act in concert with his co-defendant. The men approached the victim, an older woman, at the same time. Petitioner grabbed her purse and knocked her down and, when she did not let go, his co-defendant threatened to shoot her. Petitioner and his co-defendant fled the scene together and ran to Petitioner's motel room where the victim's purse and its contents were found by the police. Considered in a light favorable to the prosecution, such evidence was sufficient to show that Petitioner (acting as a principal or as an aider and abettor) committed the armed robbery with his co-defendant and that they conspired to do so.

Petitioner challenges the inferences the jury drew from the testimony presented during trial. However, it is the job of the fact-finder at trial, not a federal habeas court, to resolve evidentiary conflicts. *See Jackson*, 443 U.S. at 326; *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002); *Walker v. Engle*, 703 F.2d 959, 969-70 (6th Cir. 1983) ("A federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume - even if it does not affirmatively appear in the record - that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."). The jury's verdict, and the Michigan Court of Appeals' decision affirming that verdict, were reasonable. The evidence presented at trial, viewed in a light favorable to the prosecution, established beyond a reasonable doubt that Petitioner committed the crimes of which he was convicted. Habeas relief is not warranted on this claim.

## V.     Conclusion

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas relief on his claims and that the petition for a writ of habeas corpus must be denied.

Before Petitioner may appeal the Court's decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); FED. R. APP. P. 22(b). A certificate of appealability may issue "only

if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court denies relief on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the constitutional claim debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Having conducted the requisite review, the Court concludes that Petitioner fails to make a substantial showing of the denial of a constitutional right as to his claims. No certificate of appealability is warranted. Nor should Petitioner be granted leave to proceed in forma pauperis on appeal as an appeal cannot be taken in good faith. *See* FED. R. APP. P. 24(a).

Accordingly;

**IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED** and **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED** and leave to proceed in forma pauperis on appeal is **DENIED**.

s/John Corbett O'Meara<br>United States District Judge

Date: September 30, 2015

I hereby certify that a copy of the foregoing document was served upon the parties of record on this date, September 30, 2015, using the ECF system and/or ordinary mail.

s/William Barkholz<br>Case Manager